STEINBERG-BAUM & COMPANY, appellee, v. DAYTON COUNTRYMAN, Attorney General of the State of Iowa, et al., appellants.

No. 48873.

(Reported in 77 N.W.2d 15)

MAY 9, 1956.

Dayton Countryman, Attorney General, and Kent Emery, First Assistant Attorney General, for appellants.

No appearance for appellee.

GARFIELD, J.—This appeal involves the constitutionality of chapter 546A, Code, 1954 (chapter 239, Acts 55th General Assembly, 1953), requiring a license to sell new merchandise at public auction. The Act, omitting parts not here important, provides:

"546A.1  License required.  It shall be unlawful for any person, firm or corporation to sell, * * * at public auction * * * any new merchandise, unless such person, firm or corporation * * * shall have first secured a license as herein provided and shall have complied with the regulations hereinafter set forth.

"546A.2  Application.  Any person, firm or corporation desiring such license shall, at least ten days prior to such proposed auction sale, file with the board of supervisors of the county wherein it is proposed to hold such auction sale, an application in writing duly verified * * * [stating] the following facts:

"1. The name, residence and post-office address of the person, firm or corporation making the application, and if a firm * * * the name and address of the members * * *.

"2. The name, residence and post-office address of the auctioneer * * *.

"3. A detailed inventory and description of all such new merchandise to be offered for sale * * * which inventory shall set forth the cost to the applicant of the several items * * *.

"546A.3  Bond.  At the time of filing said application, * * * the applicant shall file * * * a bond, with sureties to be approved by the board of supervisors, in the penal sum of two times the value of the merchandise proposed to be offered for sale * * * running to the state of Iowa, and * * * any purchaser of any merchandise * * * conditioned on the payment * * * of all taxes that may be payable by, * * * the applicant, * * * the payment of any fines that may be assessed by any court against the applicant or auctioneer for violation of * * * this chapter, and the satisfaction of all causes of actions commenced within one year from date of such auction sale and arising therefrom, * * *.

"In such bond the applicant and the surety shall appoint the chairman of the board of supervisors of the county in which such bond is filed, the agent of the applicant and the surety for the service of process. * * *.

"Such bond shall contain the consent of the applicant and surety that the district court of the county wherein the application and bond is filed shall have jurisdiction of all actions * * * arising out of said sale. * * *.

"546A.4 Fee. At the time of filing said application and bond the applicant shall pay * * * a license fee * * * of twenty-five dollars for each day it is proposed to hold such auction * * *.

"546A.5 Issuance of license. Upon the filing of such application and after the applicant has fully complied with all the provisions of this chapter, the board of supervisors * * * shall issue * * * a license * * *.

"546A.6 Inventory. Within ten days after the last day of said auction the applicant shall file * * * an inventory of all merchandise sold * * * and the price received therefor which * * * shall be verified. The chairman of the board of supervisors shall, immediately * * *, forward a copy thereof to the state tax commission.

"546A.8 Exemptions. * * * this chapter shall not extend to the sale at public auction of livestock, farm machinery or farm produce or other items commonly sold at farm sales, or to auction sales by individuals of new merchandise, which was assessed personal property tax or is replacement stock of merchandise * * * assessed personal property tax * * *, and to auction sales under the direction of any court * * * as may be required by law.

"546A.9 Penalties. Any person who shall offer new merchandise for sale at public auction without first securing a license * * * or who shall offer for sale new merchandise different from that shown by, or in excess of the amount and value of, the inventories filed with the application * * * shall be guilty of a misdemeanor and may be punished by a fine not to exceed three hundred dollars or by imprisonment in the county jail not to exceed ninety days."

Plaintiff, a partnership with its principal place of business in Chicago, brought this action against the state attorney general and several county attorneys, as representatives of all county attorneys in the state, for a declaratory judgment, under Rules of Civil Procedure 261 to 269, that chapter 546A is unconstitutional and for an injunction against its enforcement. Following a hearing, the trial court declined to issue a temporary injunction against enforcement of the Act and on final hearing, on the same evidence, a permanent injunction was likewise refused. However, the court held the law is an unreason-

able and arbitrary interference with the conduct of a lawful business and therefore contravenes sections 1, 6 and 9, Article I, Iowa Constitution. Only defendants have appealed.

Since plaintiff has not appealed we have no occasion to consider the correctness of the trial court's failure and refusal to grant some of the relief plaintiff sought. It may not have a more favorable decision here without appealing. Robbins v. Beatty, 246 Iowa 80, 92, 93, 67 N.W.2d 12, 19, and citations.

We regret we are without the benefit of a brief for plaintiff in this court and must find its contentions in the record. Briefly, plaintiff maintains, as the trial court held, chapter 546A is such an unreasonable and arbitrary interference with the conduct of a lawful business as to prohibit, rather than merely to regulate, it. Plaintiff also contends it is an invalid discrimination against, and classification of, plaintiff's business. The trial court apparently did not pass upon this contention.

The only testimony plaintiff offered was of a partner who said it sells at auction mainly household appliances, things for the home and occasionally a little jewelry. The merchandise is principally obtained from manufacturers who have discontinued numbers or closeouts or desire more distribution. In January and February 1954, plaintiff sold about $12,000 in merchandise in ten Iowa places and had about $5800 in goods in Iowa when it discontinued its auction sales.

Mr. Steinberg testified he never applied for a license under chapter 546A, he "just couldn't do it"; it was not readily possible for plaintiff to comply with section 546A.2(3) requiring an inventory of the merchandise to be offered for sale. "But I feel I should not have to comply. Nobody else has published the cost of their merchandise and I don't feel I should either. * * * to describe what we are going to sell would definitely not be practicable." He testified his insurance company told him he could get one or two bonds but plaintiff's net worth was not such he could furnish all the bonds section 546A.3 requires; he had no idea how much stenographic work would be needed to furnish an inventory of all merchandise sold as provided by 546A.6. "It would require at least five stenographers and I don't know that I could." The witness said guarantees accom-

pany all merchandise sold; their auction sales have been profitable and if not permitted to continue them it will mean a money loss.

There can be little disagreement over the rules of law applicable to this controversy.

All presumptions are in favor of the constitutionality of chapter 546A. We have pointed out repeatedly the General Assembly has power to enact any legislation it sees fit provided it is not clearly and plainly prohibited by some constitutional provision. Within the zone of doubt and fair debate legislation is conclusive upon us. It is plaintiff's burden to negative every conceivable basis which may support this Act. It is not our province to pass upon the policy, wisdom, advisability or justice of a statute. See Dickinson v. Porter, 240 Iowa 393, 398, 399, 35 N.W.2d 66, 71 (appeal dismissed 338 U. S. 843, 70 S. Ct. 88, 94 L. Ed. 515), and citations; Knorr v. Beardsley, 240 Iowa 828, 839, 840, 38 N.W.2d 236, 243, and citations.

It is universally recognized that conducting auctions is a legitimate business which cannot be prohibited directly or indirectly. However, the right to sell at auction is not absolute but may be withheld unless reasonable regulations are complied with. The business is affected with a public interest and subject to restriction and regulation to prevent abuses and frauds. Requirements for the licensing of auctioneers and auctions as well as other regulations which are reasonable and not wholly arbitrary have long been upheld. However, restrictions that are prohibitive, oppressive or highly injurious to the business are invalid. It is sufficient to cite in support of these views 7 C. J. S., Auctions and Auctioneers, section 2; 5 Am. Jur., Auctions, sections 3, 4 and 7; annotations 31 A. L. R. 299, 39 A. L. R. 773, 111 A. L. R. 473.

Perhaps it is best to quote now the constitutional provisions plaintiff invokes. Sections 1 and 6, Article I, Iowa Constitution, are:

"Rights of persons. Section 1. All men are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring,

possessing and protecting property, and pursuing and obtaining safety and happiness.

"Laws uniform. Sec. 6. All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

Section 9, Article I, so far as pertinent, provides "no person shall be deprived of life, liberty, or property, without due process of law."

Plaintiff's main attack upon chapter 546A seems to be two-fold: First, it is so arbitrary and unreasonable as to transcend the bounds of permissible regulation. Second, it is an invalid discrimination against, and classification of, plaintiff's business. If the Act were a purely arbitrary and unreasonable regulatory measure it would offend against sections 1 and 9. And if there is no reasonable ground for singling out the class to which the law applies it would contravene section 6. Thus our problem, simply stated, is whether the Act is a reasonable regulation and, if so, whether there is reasonable basis for regulating the class to which it applies.

Chapter 546A appears to have been enacted primarily under the police power and perhaps incidentally as a revenue measure. As previously indicated, the legislature may pass laws upon both subjects unless plainly prohibited by some constitutional provision. A police regulation enacted by the General Assembly is not rendered unconstitutional by the fact it may be incidentally a revenue measure. See Jacobs v. City of Chariton, 245 Iowa 1378, 1394, 65 N.W.2d 561, 570; City of Carrollton v. Bazette, 159 Ill. 284, 42 N.E. 837, 841, 842, 31 L. R. A. 522; Brown v. State, 177 Md. 321, 9 A.2d 209, 213; annotation 31 A. L. R. 299, 306.

Formerly the police power was thought to be limited to measures that promoted merely the public health, safety or morals. Its scope is now generally recognized as much less restricted. It has repeatedly been held to include at least the promotion of prosperity and the general welfare. See Benschoter v. Hakes, 232 Iowa 1354, 1362, 8 N.W.2d 481, 486; State v.

Woitha, 227 Iowa 1, 7, 8, 287 N.W. 99, 102, 123 A. L. R. 884; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1104, 184 N.W. 823, 827, 188 N.W. 921, 23 A. L. R. 1322; Chicago, B. & Q. R. Co. v. State ex rel. Grimwood, 200 U. S. 561, 592, 26 S. Ct. 341, 50 L. Ed. 596, 609, 4 Ann. Cas. 1175; 11 Am. Jur., Constitutional Law, section 253, page 982 ("It is obvious that the tendency is to extend rather than to restrict the police power.").

■ The United States Supreme Court has frequently pointed out "the police power is not subject to any definite limitations, but is co-extensive with the necessities of the case and the safeguard of the public interests." Camfield v. United States, 167 U. S. 518, 524, 17 S. Ct. 864, 866, 42 L. Ed. 260, 262; Tanner v. Little, 240 U. S. 369, 386, 36 S. Ct. 379, 60 L. Ed. 691, 703. See also Noble State Bank v. Haskell, 219 U. S. 104, 111, 31 S. Ct. 186, 188, 55 L. Ed. 112, 116, 32 L. R. A., N. S., 1062, Ann. Cas. 1912A 487.

Hart v. City of Beverly Hills, 11 Cal.2d 343, 79 P.2d 1080, 1082 to 1084, deals at length with the growth of the police power as applied to the regulation of auctions and holds the prevention of fraud and deceit, cheating and imposition is within the police power.

Holsman v. Thomas, 112 Ohio St. 397, 400, 404, 147 N.E. 750, 751, 752, 39 A. L. R. 760, 763, is a leading case which rejects a similar attack upon the constitutionality of a Cleveland ordinance regulating auctions. The ordinance in many respects is like our statute and in some ways more exacting. It requires an inventory of the goods on hand and a bond to be filed with the application for the license and, if the merchandise is added to, a sworn statement " 'as to the quantity and quality and value of the fill-in.' " The opinion points out that the police power relates not merely to public physical safety but also to public financial safety. "Laws may be passed within the police power to protect the public from financial loss." To the same effect are Gordon v. City of Indianapolis, 204 Ind. 79, 183 N.E. 124, 125, 126; People v. Sell, 310 Mich. 305, 17 N.W.2d 193, 198.

■ The reasonableness of a police regulation is a question of fact and the burden rests upon the one who attacks it to show

it is unreasonable unless this appears on the face of the measure. Iowa City v. Newell, 115 Iowa 55, 58, 87 N.W. 739; Wagman v. City of Trenton, 102 N. J. Law 492, 134 A. 115, and citations; Village of Minneota v. Martin, 124 Minn. 498, 145 N.W. 383, 51 L. R. A., N. S., 40, Ann. Cas. 1915B 812, 813.

We are not convinced chapter 546A is on its face unreasonable, in the constitutional sense, or that plaintiff has succeeded in showing its unreasonableness. Courts have long recognized the evils which may flow from auctions and the opportunity they afford to deceive and defraud the unsophisticated. Of course auctions may be honestly conducted. But there are also merchants, often itinerant, with little. financial responsibility who go from place to place to sell at auction, leaving in time to avoid civil or criminal responsibility for fraud in conducting such sales. This Act may afford the public at least some protection against irresponsible or unscrupulous holders of auctions. Insofar as it burdens honest business it does so in an attempt to discourage dishonest business.

Chapter 546A does not prohibit auctions. It merely regulates them by providing the conditions under which they may be held. Compliance with its provisions doubtless causes some inconvenience and expense. But the constitutional provisions plaintiff invokes do not render it immune from these consequences. The state's police power is not arrested by such considerations. Merrick v. Halsey & Co., 242 U. S. 568, 587, 37 S. Ct. 227, 231, 61 L. Ed. 498, 509; Ex parte West, 75 Cal. App. 591, 243 P. 55, 59; Holsman v. Thomas, supra, 112 Ohio St. 397, 404, 147 N.E. 750, 752, 39 A. L. R. 760, 763.

That a law may be severe, drastic or work hardship does not render it unconstitutional in the respect claimed. Jacobs v. City of Chariton, supra, 245 Iowa 1378, 1394, 65 N.W.2d 561, 570, and citations; Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 577, 35 S. Ct. 167, 59 L. Ed. 364, 369; Ex parte West, supra; Mogul v. Gaither, 142 Md. 380, 121 A. 32, 35.

The record indicates plaintiff's strongest objection is to the requirement of section 546A.2(3) that an inventory be furnished of the merchandise to be offered for sale, setting forth the cost of the several items. This appears to be the most exact-

ing provision of the law. Generally similar regulations have been upheld against like attacks in Ex parte West, supra, 75 Cal. App. 591, 243 P. 55; Mogul v. Gaither, supra, 142 Md. 380, 121 A. 32; Billig v. State, 157 Md. 185, 145 A. 492, 494, 495; Holsman v. Thomas, supra, 112 Ohio St. 397, 147 N.E. 750, 751, 39 A. L. R. 760, 761; San Antonio v. South Trunk Co., Tex. Civ. App., 13 S.W.2d 401. See also Moore v. Oklahoma City, 161 Okla. 205, 17 P.2d 953.

Referring to a requirement that an inventory be filed with the application "showing in detail the quality, quantity, kind or grade of the goods * * * to be sold" and a further provision, similar to section 546A.6, that a verified report of the sale be filed showing the prices obtained, and other provisions, Billig v. State, supra, says (at pages 189, 190 of 157 Md., pages 494, 495 of 145 A.): "However, these additional provisions are regulatory * * * requirements of a general and reasonable nature, well designed to secure the primary object of the ordinance * * *."

A requirement somewhat similar to section 546A.3 as to a bond has been a common regulatory provision that has been upheld. Holsman v. Thomas, supra; San Antonio v. South Trunk Co., supra (bond of $5000 required); Clein v. City of Atlanta, 164 Ga. 529, 139 S.E. 46, 53 A. L. R. 933 (bond of $5000); People ex rel. Schwab v. Grant, 126 N. Y. 473, 27 N.E. 964; 5 Am. Jur., Auctions, section 7. We do not regard this requirement as purely arbitrary or capricious. Mr. Steinberg in his testimony emphasized that plaintiff guaranteed all merchandise offered for sale. Doubtless the guaranty serves as an inducement to buy. Obviously the bond is a protection to the public, renders the guaranty more effective and helps induce compliance with the law. It may also render collection of taxes less difficult.

A requirement generally like section 546A.6 of a report of the merchandise sold and the price received therefor seems also to be fairly common and to have been sustained. As early as 1838 a New York statute required auctioneers to make return to the comptroller of all goods sold by them. See People ex rel. Schwab v. Grant, supra. We have already observed that the ordinance upheld in Billig v. State, supra, 157 Md. 185, 145 A. 492, 494, contained a provision almost identical with 546A.6. It appears an important reason for this requirement, as well as for

the bond, was to facilitate collection of the state sales tax and discourage evasion thereof. This seems to be a proper matter for legislative consideration.

There is no evidence the license fee of $25 a day required by 546A.4 is excessive. In the absence of such evidence there is no basis for holding it is so unreasonable as to invalidate either the Act as a whole or this one provision. We have frequently taken judicial notice of the lessened value of the dollar in recent years. See Weilbrenner v. Owens, 246 Iowa 580, 589, 68 N.W..2d 293, 298, and citations. In terms of purchasing power this fee is little if any higher than $10 would have been 25 years ago.

"Where the legislature itself has exercised its discretion as to what is a reasonable license fee, the courts interfere reluctantly, and then only when it is clear that there has been an abuse of discretion." 5 Am. Jur., Auctions, section 5.

Our conclusion the amount 546A.4 requires is not unreasonable finds support in Iowa City v. Newell (1901), 115 Iowa 55, 87 N.W. 739 (fee of $50 a week from transient merchants upheld as a tax); Freeman v. Tittsworth (1936), 126 Fla. 483, 171 So. 307 ($50 a day for itinerant auctioneers not unreasonable); Village of Minneota v. Martin (1914), supra, 124 Minn. 498, 145 N.W. 383, 51 L. R. A., N. S., 40, Ann. Cas. 1915B 812 ($25 a day); Stull v. De Mattos (1900), 23 Wash. 71, 62 P. 451, 51 L. R. A. 892 ($25 a day sustained as a tax).

In view of the many decisions involving the validity of regulations of auctions it is not surprising there are some divergent views. We have carefully considered Webber v. City of Scottsbluff, 141 Neb. 363, 3 N.W.2d 635, and Perry Trading Co. v. Tallahassee, 128 Fla. 424, 174 So. 854, 111 A. L. R. 463, which hold invalid city ordinances similar in many ways to our chapter 546A. In several respects, however, they were more restrictive than our statute, especially as to times, hours and methods of holding the auctions. This is particularly true of the Tallahassee ordinance. Also of the ordinance considered in Hagerman v. City of St. Louis, Mo., 283 S.W.2d 623, where the decision is based in part on a peculiar provision of the Missouri Constitution. The Florida case seems to apply the rule that doubt as to

the extent of municipal power is resolved against the municipality. Obviously such a rule has no application here but the reverse is true. We think the Florida decision also regards the police power as unduly restricted in scope. Jones v. City of Jackson, 195 Tenn. 329, 259 S.W.2d 649, 652, 653, refuses to follow Perry Trading Co. v. Tallahassee. We cannot agree with the sweeping assertion of the Webber opinion, supra, that none of the regulations there considered has "any relation to public health, safety or welfare." (Page 369 of 141 Neb., page 638 of 3 N.W.2d.)

Careful consideration has also been given Blauvelt v. Beck, 162 Neb. 576, 76 N.W.2d 738. The statute there held invalid is, in some vital respects, more exacting than our statute. We are not to be understood, however, as approving all that is said in the Blauvelt opinion.

It follows from our holding chapter 546A is not an arbitrary, unreasonable exercise of the police power that it does not contravene section 1 or 9, Article I, Iowa Constitution. Burlington and Summit Apts. v. Manolato, 233 Iowa 15, 20, 7 N.W.2d 26, 29, 144 A. L. R. 251, 255, and citations; Benschoter v. Hakes, supra, 232 Iowa 1354, 1361, 8 N.W.2d 481, 485; May's Drug Stores, Inc. v. State Tax Comm., 242 Iowa 319, 329, 330, 45 N.W.2d 245, 250, 251.

Plaintiff's contention chapter 546A is nonuniform and discriminatory, in violation of section 6, Article I of our Constitution, has less merit than the complaint just disposed of. It is fundamental this constitutional provision does not require that all laws shall apply alike to all citizens of the state. It is sufficient if a statute applies equally to members of a class, provided the classification is not purely arbitrary but rests upon some reasonable basis. It is equally settled the legislature has wide discretion in determining the classes to which its Acts shall apply. Cook v. Hannah, 230 Iowa 249, 253, 297 N.W. 262, 265, and citations; Dickinson v. Porter, supra, 240 Iowa 393, 401, 35 N.W.2d 66, 72; Thomas v. State, 241 Iowa 1072, 1080, 1081, 44 N.W.2d 410, 414, 415.

Chapter 546A applies to auction sales of new merchandise not assessed personal property tax in the county in which the

sale is had. (Sections 546A.1 and 546A.8.) As a practical matter the law applies mainly to those who have no established place of business in a county but bring in merchandise for the purpose of selling it at auction. They are frequently referred to as itinerant merchants. It is not a gross exaggeration to say those who dispense goods in this manner are usually here today and gone tomorrow.

The legislature may well have found there are greater opportunities for deception and fraud in such sales than in those from established places of business. Also that those who conduct such auctions require more policing and are a greater burden to the community since they assume no responsibility for its welfare. (The evidence is plaintiff's sales are attended by 200 to 400 people.) Further, that in the absence of regulation transient merchants compete unfairly with established dealers by escaping their share of general taxation and in other ways.

Upon these and like considerations courts have frequently upheld comparable legislative classifications. This law does not discriminate against nonresidents in favor of Iowa residents. Plaintiff would be as much subject to its terms if its principal place of business were in Iowa, not Illinois. The method of doing business, not the residence of those engaged in it, is the controlling consideration. City of Ottumwa v. Zekind, 95 Iowa 622, 64 N.W. 646, 29 L. R. A. 734, 58 Am. St. Rep. 447; Town of Scranton v. Hensen, 151 Iowa 221, 226, 227, 130 N.W. 1079. (See annotations 61 A. L. R. 337, 112 A. L. R. 63.) That there is reasonable basis for the classification chapter 546A provides and it is not wholly arbitrary and capricious we have little doubt.

This law applies equally to all within the designated class. The exemption in section 546A.8 of sales of livestock and other items commonly sold at farm sales and those under direction of a court was evidently inserted out of an abundance of caution. The law would not apply to sales of that kind—at least not to farm sales—in the absence of section 546A.8. In any event it is clear there is reasonable basis for these exemptions. See Biddles, Inc. v. Enright, 239 N. Y. 354, 146 N.E. 625, 39 A. L. R. 766, 767, 772. Apparently most auction regulatory measures

provide they do not apply to sales under court order. We know of no such regulation held invalid because it included such a provision.

In support of our conclusion chapter 546A does not contravene section 6, Article I, of our Constitution, see City of Ottumwa v. Zekind, supra, 95 Iowa 622, 64 N.W. 646, 29 L. R. A. 734, 58 Am. St. Rep. 447; Baccus v. Louisiana, 232 U. S. 334, 34 S. Ct. 439, 58 L. Ed. 627; Emert v. Missouri, 156 U. S. 296, 15 S. Ct. 367, 39 L. Ed. 430; Ex parte West, supra, 75 Cal. App. 591, 243 P. 55; Freeman v. Tittsworth, supra, 126 Fla. 483, 171 So. 307 (ordinance fixed fee of $250 annually for auctioneers conducting sales from permanently established place and of $50 a day on itinerant auctioneers); Gordon v. City of Indianapolis, supra, 204 Ind. 79, 183 N.E. 124; Mogul v. Gaither, supra, 142 Md. 380, 121 A. 32; Billig v. State, supra, 157 Md. 185, 145 A. 492, 494, 495; Saigh v. City of Petoskey, 251 Mich. 77, 231 N.W. 107, 108; Wright v. May, 127 Minn. 150, 149 N.W. 9, L. R. A. 1915B 151 (statute authorized an auctioneer's license to any voter of the county—nonresidents and resident aliens ineligible); Holsman v. Thomas, supra, 112 Ohio St. 397, 147 N.E. 750, 39 A. L. R. 760; Moore v. Oklahoma City, supra, 161 Okla. 205, 17 P.2d 953.

Ex parte West, Gordon v. City of Indianapolis, Mogul v. Gaither, Billig v. State, Saigh v. City of Petoskey, and Moore v. Oklahoma City, all supra, uphold ordinances regulating certain auction sales which provide no license shall be issued to one who has not operated an established place of business in the city continuously for a year, or exempt such persons from the regulations. Holsman v. Thomas, supra, holds valid an ordinance containing a similar, but more exacting, classification. Commonwealth v. Loeb, 245 Ky. 843, 54 S.W.2d 373, is contrary to these decisions.

Our conclusion chapter 546A is not unconstitutional in the respects asserted by plaintiff renders unnecessary a decision on other contentions urged by defendants.—Reversed.

All JUSTICES concur.